IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.

JENNIFER SAFKEN,
CHRISTOPHER SAFKEN,

Plaintiffs,

v.

MAGICSOFT GRP, INC.,
D.B.A. DEALESTATE.AI ENTERPRISES,
BEBELONG,
INFINITE CAPITAL GROWTH MANAGEMENT LLC,
GABRIEL BAR SHANY,
BELLA COHEN,
SHANI BAR,
JAVIER PINEYRO,
ASH SHAH,
SRIDHAR SANNIDHI.

Defendants.
_______________________________/

## VERIFIED COMPLAINT AND ACTION FOR DAMAGES

COME NOW, Jennifer Safken and Christopher Safken ("Safkens"), by and through undersigned counsel, and hereby files this Verified Complaint and Action for Damages against the Defendants. In support thereof it is alleged:

## ALLEGATIONS AS TO PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Jennifer Safken, an individual, resides in Seminole County, Florida, is over the age of 18, and is otherwise *sui juris*.

2. Plaintiff Christopher Safken, an individual, resides in Seminole County, Florida, is over the age of 18, and is otherwise *sui juris*.

3. The Plaintiffs are similarly situated husband and wife, and their losses described herein were jointly suffered and are continuing.

4. The Plaintiffs bring this action against the Defendants under the RICO (Racketeer Influenced and Corrupt Organization) Act, Fla. Stat. §§ 895.01-09, Florida's Communications Fraud Act, Fla. Stat. § 817.034, fraud, and breach of fiduciary duty, among others, and is predicated upon a racketeering scheme orchestrated by the individual Defendants and their fraudulent business entities to defraud the Plaintiffs, and others similarly situated, out of thousands of dollars through fraudulent misrepresentation.

5. Defendant, MagicSoft Grp Inc., a Corporation not registered to do business in Florida, doing business as DealEstate.AI Enterprises and/or BeBelong, ("the company" or "the companies") with its principal place of business located in Miami-Dade County, Florida.

6. Defendant, Infinite Capital Growth Management, LLC, is a Florida Corporation organized under the laws of the State of Florida with its principal place of business located in Miami-Dade County, Florida.

7. The companies, Magicsoft Grp, Inc. Infinite Capital Growth Management, LLC, DealEstate.AI, and BeBelong ("hereinafter collectively referred to as the "Companies") are used interchangeably, and have never been represented by the Defendants to be separate and distinct.

8. Defendant, Gabriel Bar Shany (also known as Gabe Bar), an individual, board member, and CTO, resides in Miami-Dade County, Florida, is over the age of 18, and is otherwise *sui juris*.

9. Defendant, Bella Cohen, an individual, board member, and COO, resides in Miami-Dade County, Florida, is over the age of 18, and is otherwise *sui juris*.

10. Defendant, Shani Bar, an individual, board member, and CRO, resides in Miami-Dade County, Florida, is over the age of 18, and is otherwise *sui juris*.

11. Defendant, Javier Pineyro, an individual and board member, resides in Miami-Dade County, Florida, is over the age of 18, and is otherwise *sui juris*.

12. Defendant, Ash Shah, an individual and board member, resides in Houston, Texas is over the age of 18, and is otherwise *sui juris*.

13. Defendant Sridhar Sannidhi, an individual and board member, resides in Frisco, Texas, is over the age of 18, and is otherwise *sui juris*.

14. The amount in controversy exceeds $50,000.00 excluding interest costs and attorney's fees, which is within the jurisdiction of this Honorable Court in accordance with § 26.012 of the Florida Statutes.

15. Venue in Miami-Dade County, Florida is proper in this action under § 47.011 of the Florida Statutes because all transactions and occurrences giving rise to this action occurred in this county.

## GENERAL ALLEGATIONS

16. On or about March 26, 2024, Shani Bar of DealEstate.AI messaged the Plaintiff, Jennifer Safken, on LinkedIn introducing DealEstate.AI Enterprises and seeking to set up a meeting with the Safkens. (Exhibit 1).

17. On or about April 15, 2024, Bella Cohen held a meeting with Jennifer Safken. Bella Cohen presented Mrs. Safken with DealEstate.AI, a multifamily real estate investment syndication. (Exhibit 2).

18. Bella assured Mrs. Safken she would secure a multifamily property within six (6) months. (Exhibit 2).

19. Bella made representations that if the Safkens did not feel they were a right fit for the program, the Safkens would get their $85,000.00 back.

20. Bella explained the $85,000.00 investment would serve as a contribution towards their first property.

21. Mrs. Safken expressed concern that she and her husband could not afford the investment without taking out a home equity loan.

22. Bella assured her she felt "confident in their abilities," encouraged them to proceed, and scheduled the next meeting with Gabriel Bar Shany.

23. On or about April 29, 2024, Jennifer Safken and Christopher Safken had the next meeting with Gabriel Bar Shany and Bella Cohen.

24. During this meeting, the Safkens expressed their limited experience in multifamily real estate investing, their concerns with the $85,000.00, and their ability to raise capital.

25. The Companies, Bella, and Gabriel were well aware of the Safkens financial situation and professions.

26. Gabriel assured the Safkens that a property would be secured in at least six (6) months through the Deal Estate Accelerator Program.

27. Gabriel assured the Safkens they would not need to worry about capital raising, as DealEstate.AI would handle it.

28. Gabriel told the Safkens that if they did not feel like they were a good fit, then they would receive the full $85,000.00 back.

29. Gabriel encouraged the Safkens to move forward to "Pitch Day," and the Safkens received the GP ("General Partner") Service Agreement in their email shortly after the meeting.

30. On or about May 6th and May 7th, 2024, the Sakfens met with Gabriel to discuss the contract.

31. Gabriel continuously assured the Safkens the contract was "all legal jargon" and not a concern.

32. During this meeting, Gabriel once again assured the Safkens that they would receive their $85,000.00 back if they felt they weren't a good fit.

33. On or about May 13th, 2024, the Safkens and Bella Cohen signed the GP Service Agreement. (Exhibit 3).

34. The GP Service Agreement is between the Safkens and Magicsoft Grp, Inc. (Exhibit 3).

35. On or about May 14th, 2024, Bella and Gabriel had meetings preparing the Safkens for their final interview with their syndication, otherwise known as "Pitch Day."

36. Pitch Day occurred on May 15th, 2024.

37. At Pitch Day, the Safkens were introduced to the board, which included Sridhar Sannidhi and Javier Pineyro.

38. On or about May 17th, 2024, DealEstate.AI informed the Safkens they were "accepted" into the syndication. (Exhibit 4)

39. On or about May 18th, 2024, Bella sent an email regarding the Safkens' acceptance and wire instructions.

40. On or about June 5th and 6th, 2024, DealEstate.AI held an event for the general partners at the Marenas Beach Resort Miami. The Safkens were in attendance.

41. On or about August 7, 2024, Mrs. Safken received a presentation deck that made different claims than what was presented to her in the original deck. (Exhibit 5).

42. The original presentation deck provided a roadmap which promised a property in 25 weeks. (Exhibit 2).

43. The updated presentation deck promised a property in 41 weeks. (Exhibit 4).

44. The updated presentation deck listed Jennifer and Christopher as "vetted hands-on operators." (Exhibit 5).

45. Gabriel recommended the Safkens speak with and be mentored by Christopher Tinsley, another GP.

46. Tinsley and the Safkens met on a regular basis to find properties, all of which were rejected by DealEstate.AI.

47. Tinsley was presented to the Safkens in the original presentation deck as a "vetted" GP.

48. Tinsley has never closed on a property, despite the claims made in the presentations. (Exhibit 2, 5).

49. Upon information and belief, hundreds of properties have been presented to DealEstate.AI through the portal and no deal has come to fruition.

50. The Safkens uploaded several deals to the Deal Flow Portal that successfully went through underwriting but were always ultimately rejected.

51. On or about November 1st, 2024, Jennifer Safken emailed Bella and Gabriel requesting to terminate the contract and receive a return of their $85,000.00 as originally promised. (Exhibit 6).

52. On or about November 5th, 2024, the Safkens held a meeting with Gabriel to discuss and express their concerns regarding the DealEstate.AI program.

53. During the meeting, the Safkens expressed their dissatisfaction with the reality of

the timeline versus what was originally presented.

54. Gabriel informed the Safkens they could only receive a return of their $85,000.00 if a property they present was brought under contract.

55. The Safkens expressed this was not what was told to them in the initial meetings, and explained no GP has succeeded in securing a deal.

56. The Safkens cannot leave the syndication with a refund, unless they bring a property to contract- yet, DealEstate.AI has rejected every property presented, and no GP has been successful in bringing a property to contract. It is a "catch-22."

57. Gabriel stated the $85,000.00 went to "tools," not a property, as initially presented and outlined in the contract.

58. To date, no details or information has been provided to the Safkens regarding where the $85,000.00 was allocated.

59. To date, DealEstate.AI has not closed on a deal with the Safkens.

60. To date, the Companies have not closed on a deal since their inception.

61. It soon became apparent to the Safkens that the individuals involved at DealEstate.AI had success in securing a multifamily property or syndication, contrary to all the representations made.

62. Upon information and belief, the Safkens are only two of an approximate twenty five (25) general partners that are similarly situated.

63. Upon information and belief, the funds collected by DealEstate.AI were used for personal expenses of the board members such as Bella, Gabriel, and Shani.

64. The Defendants represented that all meetings with Plaintiff were recorded.

65. The Plaintiffs have not been provided with access to the recorded meetings.

**COUNT 1- FLORIDA'S RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) §§ 895.01-05**
**(Against all Defendants)**

66. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

67. MagicSoft Grp, Inc. (D.B.A. DealEstate.AI and BeBelong), Infinite Capital Growth Management LLC, Bella Cohen, Gabriel Bar, Shani Bar, Javier Pineyro, Sridhar Sannidhi, and Ash Shah are hereafter collectively referred to as the "RICO Defendants."

68. The Plaintiffs assert a claim for breach of violations of Florida's RICO statute, Fla. Stat. § 895.01, and civil and injunctive relief under Fla. Stat. §§ 895.03-05.

69. As described above, the RICO Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding the Plaintiffs.

70. The Enterprise's success would not have been successful but for the active and willing participation of each of the RICO Defendants.

71. The success of the Enterprise was built upon the control of Bella Cohen, Gabriel Bar, Shani Bar, Javier Pineyro, Sridhar Sannidhi, and Ash Shah, along with the establishing of DealEstate.AI and Companies, in which to perpetuate a fraud against the Plaintiffs.

72. The acts of Bella Cohen, Gabriel Bar, Shani Bar, Javier Pineyro, Sridhar Sannidhi, and Ash Shah provided the Enterprise with a platform through which the Enterprise could manipulate the individuals involved.

73. The success of the fraudulent syndication scheme allowed the RICO Defendants to enjoy a significant amount of unlawfully obtained funds.

74. To effectuate their illegal objectives of the Enterprise and in furtherance of the scheme to defraud, the RICO Defendants committed numerous illicit acts in violation of the

Florida RICO Act, Florida's Communications Fraud Act, and common law fraud.

75. The predicate acts constituted a variety of unlawful activities, each conducted in furtherance of the Enterprise and with the common purpose, including, without limitation, to defraud the Plaintiffs by making knowingly false statements of material fact regarding:

a. The company portfolio;

b. The success of the company;

c. The members of the board;

d. The timeline in which a property would be secured;

e. The underwriting process;

f. The "Deal Flow Portal";

g. The capital raising;

h. Their expertise and knowledge in the field;

I. Their ability to receive a refund of their contribution;

76. These predicate acts constitute a pattern of criminal racketeering activity because (1) at least two of the acts had the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents; (2) as described throughout this Complaint, this series of related acts extended over a substantial, but closed, period of time, and (3) the last of such related acts occurred within five years.

77. These predicate acts are related and not isolated events.

78. The RICO Defendants acts constitute a systematic, ongoing course of conduct with intent to defraud one or more persons or with intent to obtain property from them by false or fraudulent pretenses, representations, endorsements, or nonconsenting parties, or promises or

willful misrepresentations of a future act.

WHEREFORE, the Plaintiffs demand judgment against Defendants for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 2- VIOLATION OF FLORIDA'S COMMUNICATIONS FRAUD ACT, FLA. STAT. § 817.034 (Against all Defendants)**

79. Plaintiffs reaver and reallege paragraphs 1-65 herein.

80. As set forth above, the RICO Defendants agreed and conspired to violate Florida's Communication Fraud statute, Fla. Stat. § 817.034. Specifically:

81. As part of and in furtherance of the fraudulent scheme set forth above, beginning in or about 2024, the RICO Defendants knowingly and with the intent to obtain money from the Plaintiffs by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme, transmitted, and caused to be transmitted certain wire communications in interstate commerce.

82. The RICO Defendants made false representations throughout the onboarding process and the Plaintiffs relationship with the RICO Defendants, as outlined above, via wire communications, including but not limited to phone calls, video calls, emails, and text messages.

83. By engaging in the foregoing scheme involving the false representations made in phone calls, video calls, emails, and text messages, the RICO Defendants intentionally participated in a scheme, using wires, to defraud the Plaintiffs.

84. Through the foregoing conduct, the RICO Defendants, having devised, and intending to devise, a scheme and artifice to defraud, and for otaining money by means of false

and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals for the purpose of executing such scheme and artifice to defraud, in violation of Fla. Stat. § 817.034.

WHEREFORE, the Plaintiffs demand judgment against Defendants for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 3- CONSPIRACY TO VIOLATE FLORIDA RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT FLA. STAT. § 895.03 (Against Bella, Gabriel, Shani, Javier, Ash, & Sridhar)**

85. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

86. As set forth above, the Defendants agreed and conspired to violate Florida's RICO Statute, Fla. Stat. § 895.03. Specifically:

87. Bella, Gabriel, Shani, Javier, Ash, and Sridhar created MagicSoft and the companies to look like a legitimate multifamily real estate syndication.

88. Bella, Gabriel, Shani, Javier, Ash, and Sridhar attended multifamily investing conferences and reached out to attendees to offer their services.

89. Bella, Gabriel, Shani, Javier, Ash, and Sridhar used seemingly promising presentations with false statements to lure unsuspecting people, such as the Plaintiffs.

90. Bella, Gabriel, Shani, Javier, Ash, and Sridhar inflated and falsified the company portfolio, to make it seem successful. In reality, the persons listed on the website are not associated with DealEstate.AI, and the properties are not held by DealEstate.AI but rather their board members.

91. Bella, Gabriel, Shani, Javier, Ash, and Sridhar conspired to receive contributions from GPs, such as the Plaintiffs.

92. The Companies received payments from GPs, such as the Plaintiffs, ranging between $65,000 to $85,000.00 each.

93. The contributions received were then distributed and used for the Defendants personal expenses and gain.

94. Bella, Gabriel, Shani, Javier, Ash, and Sridhar aided and abetted, encouraged, and rendered substantial assistance to each other and the other Defendants in perpetuating their unlawful and fraudulent scheme against the Plaintiffs.

95. Bella, Gabriel, Shani, Javier, Ash, and Sridhar as alleged herein to aid, abet, encourage, and substantially assist in the commissions of wrongful acts and other wrongdoings regarding the fraudulent misrepresentations made to Plaintiffs, acted with awareness of their wrongdoing, and realized their conduct would substantially assist and/or accomplish the wrongful acts alleged herein.

96. The objective of the conspiracy included, without limitation, collecting the money of victims, such as the Plaintiff, and use the money collected for their own personal gain.

97. At the time Bella, Gabriel, Shani, Javier, Ash, and Sridhar joined such conspiracy, they did so with the specific intent either to personally engage in at least two incidents of racketeering conduct, or they specifically intended to otherwise participate in the affairs of the enterprise with the knowledge and intent that the other members of the conspiracy would engage in at least two predicate acts of racketeering conduct, as part of a pattern of racketeering conduct.

98. Bella, Gabriel, Shani, Javier, Ash, and Sridhar knowingly and willfully joined in and became a member of such conspiracy.

99. Through Bella's, Gabriel's, Shani's, Javier's, Ash's, and Sridhar's conspiracy to violate the Florida RICO Act, the Plaintiffs have suffered injury that would not have occurred

but for the defendants' fraudulent scheme. Specifically, the loss of $85,000.00 paid to DealEstate.AI through fraud and misrepresentation.

100. Bella, Gabriel, Shani, Javier, Ash, and Sridhar are jointly and severally liable for the acts of one another and for the acts of the enterprise, as their acts were pursuant to a single conspiracy.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, attorney's fees under Florida Law, injunctive relief pursuant to Fla. Stat. § 895.05 (6), pre- and post-judgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 4- FRAUD IN THE INDUCEMENT**
**(Against all Defendants)**

101. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

102. The Defendants made false statements of material fact concerning the ability to exit the syndication and receive a full refund of $85,000.00. The Defendants promised several times during the onboarding process that the Plaintiff's would be able to exit the syndication with a full refund if the Safkens felt they weren't a "good/right fit."

103. The Defendants made false statements of material fact regarding DealEstate.AI's capabilities.

104. The Defendants made false statements of material fact regarding the experience held by the members.

105. The Defendants made false statements of material fact regarding the timeline in which GPs would execute on properties. The Safkens were promised a property within six (6) months. The timeline subsequently moved to 41 weeks.

106. The Defendants knew or should have known the falsity of the above-mentioned

statements.

107. The Defendants intentionally misrepresented to the Plaintiffs that DealEstate.AI was a legitimate company.

108. The Defendant's intended that the above-mentioned statements would induce the Safkens reliance.

109. The Safkens relied on the above-mentioned statements to their detriment, suffering injury.

110. The Plaintiffs reserve the right to seek punitive damages.

WHEREFORE, the Plaintiffs demand judgment against Defendants for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 5 -DECLARATORY JUDGMENT FOR RESCISSION**
**(Against MagicSoft Grp, Inc. And Bella Cohen)**

111. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

112. Magicsoft Grp, Inc. is not a registered Florida corporation or foreign entity registered to do business in the state of Florida.

113. The Defendant, Magicsoft Grp, Inc., (found on SunBiz as MAGICSOFT GRP INC.) was voluntarily dissolved in Florida on April 30, 2024. (Exhibit 7).

114. No other business is registered to do business in the state of Florida or as a fictitious name under DealEstate.AI or BeBelong.

115. The Contract referred to herein is attached as Exhibit 3. The date of the Contract was May 13, 2024, after the company was voluntarily dissolved and no longer in existence.

116. The Defendant lacked the capacity to enter into a contract.

117. The Defendants misrepresented material facts.

118. The Defendants made false statements of material fact concerning the ability to exit the syndication and receive a full refund of $85,000.00.

119. The Defendants made false statements of material fact regarding the companies' capabilities.

120. The Defendants made false statements of material fact regarding the experience held by the members.

121. The Defendants made false statements of material fact regarding the timeline in which GP's would execute on properties.

122. The Safkens have rescinded the contract and notified the Defendants of such rescission.

123. The Safkens have not received any benefits to return to the Defendants.

124. The Safkens have no adequate remedy at law.

WHEREFORE, The Plaintiffs pray for entry of declaratory judgment, damages, consequential damages, prejudgment interests, attorneys fees, costs, and such other relief as the Court deems just.

**COUNT 6- ALTERNATIVE COUNT DECLARATORY JUDGMENT TO DECLARE THE CONTRACT VOID**
**(Against MagicSoft Grp, Inc. and Bella Cohen)**

125. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

126. The Plaintiffs have not received the benefit of the bargain.

127. The contract is so vague, indefinite and uncertain that it is illusory and incapable of enforcement.

128. The lack of performance by DealEstate.AI undermines the agreement's validity.

129. The defendant has done nothing in return for the receipt of $85,000.00.

WHEREFORE, The Plaintiffs pray for entry of declaratory judgment, damages, consequential damages, prejudgment interests, attorneys fees, costs, and such other relief as the Court deems just.

## COUNT 7- BREACH OF FIDUCIARY DUTY
## (Against all Defendants)

130. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

131. Defendants are a fiduciary who solicited the Plaintiffs investment.

132. Defendants were acting to provide expert services.

133. Defendants presented they had the experience and knowledge, which consumated the fiduciary duty owed.

134. Defendants acted in concert.

135. The Defendant owes the Plaintiffs a fiduciary duty, particularly a fiduciary duty of loyalty and care, and were required to abide by Fla. Stat. § 518.11 prudent investor rule as Defendants sold to those socioeconomic background would not justify such an investment.

136. The Defendant, a fiduciary, has the duty to inform the Plaintiffs of risks involved, to act in the Plaintiffs best interest, the duty to refrain from self-dealing, and the duty not to misrepresent any material fact to the transaction.

137. The Defendants preyed on the Safken's lack of knowledge and financial situation.

138. The Defendants misrepresented the timeline and ability to recover the $85,000.00 investment should they decide to leave the syndication.

139. Defendants breached the fiduciary duty owed.

140. Plaintiffs have been damaged as a result of Defendant's breach of fiduciary duty, suffering a pecuniary loss of $85,000.00.

WHEREFORE, the Plaintiffs demand judgment against Defendants for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 8- CIVIL THEFT**
**(Against MagicSoft Grp, Inc.)**

141. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

142. Defendant entered into a scheme to solicit the Safkens investment of $85,000.00.

143. The Plaintiffs paid the Defendant $85,000.00 which the Defendant received, acknowledged receipt, and has failed to confer any benefit in return upon the Plaintiffs.

144. The Defendant willfully, wantonly, and maliciously solicited and retained the sum set forth above.

145. The Plaintiffs are entitled to Fla. Stat. § 772.11 Civil Theft relief, including injunctive relief, trebled damages, award of attorney's fees, and prejudgment interest and costs.

146. The Plaintiffs are entitled to have, hold, and recover the entire amount paid and treble damages, amounting to $255,000.00 plus prejudgment interest and statutory attorney's fees.

WHEREFORE, the Plaintiffs demand judgment against Defendant for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 9- UNJUST ENRICHMENT**
**(Against all Defendants)**

147. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

148. The Plaintiff has conferred a benefit, the payment of $85,000.00, on the defendant, who has knowledge thereof;

149. The Defendant voluntarily accepts and retains the benefit conferred, and;

150. The circumstances are such that it would be inequitable for the Defendant to retain the benefit.

WHEREFORE, the Plaintiffs demand judgment against Defendants for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**COUNT 10- PROMISSORY ESTOPPEL**
**(Against MagicSoft Grp, Inc.)**

151. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

152. Defendant represented the Plaintiff's would be able to leave the syndication and receive a full refund if they did not feel like a "good fit."

153. Defendant represented the Plaintiff's would have a multifamily property within six (6) months.

154. The above statements are material facts that are contrary to the position taken by the Defendants upon the Plaintiff's request to leave the syndication and receive a full refund.

155. The above statement is contrary to the position taken at subsequent presentations to new GPs, where the timeline was extended to 41 weeks. To date, all properties have been rejected by DealEstate.AI.

156. The Plaintiffs relied on this representation.

157. The change in position is detrimental to the Plaintiff. But for the Defendant's statements, the Plaintiff's would not have joined.

WHEREFORE, the Plaintiffs demand judgment against Defendant for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**ALTERNATIVE COUNT 11- BREACH OF CONTRACT**
**(Against Magicsoft Grp, Inc.)**

158. The Plaintiffs reaver and reallege paragraphs 1-65 herein.

159. The Plaintiffs and Defendant entered into a contract.

160. The Defendant made false representations regarding material facts, ultimately materially breaching the contract and are estopped from denying otherwise.

161. The Plaintiff has been damaged in the amount of $85,000.00.

WHEREFORE, the Plaintiffs demand judgment against Defendant for damages, attorneys fees under Florida Law, pre- and post- judgment interest, costs, and such other relief this Court deems just and proper.

**Under penalties of perjury, I declare I have read the foregoing and that the facts stated are true.**

__________________________

**Jennifer Safken**

__________________________

**Christopher Safken**

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all issues so triable.

Date: March 14, 2025

Respectfully submitted,

By: John R. Sutton/s/
John R. Sutton
Florida Bar No. 149411

By: Emma Pascual/s/
Emma A. Pascual
Florida Bar No. 1058112
Attorneys for Plaintiffs
Sutton Pomares Law Group, P.A.
7721 SW 62nd Avenue, First Floor
South Miami, Florida 33143
Tel. (305) 667-4481
Fax (305) 666-2118
E-Mail: emma@suttonlawgroup.com
Secondary-Email: info@suttonlawgroup.com